UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROBERTO C. REYES PARRA,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | Case No. EDCV 14-2571 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for supplemental security income and disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff alleges disability beginning on August 24, 2008 due to a back injury. [Administrative Record ("AR") 205]. In a written hearing decision dated May 10, 2013, the Administrative Law Judge ("ALJ") concluded that plaintiff had medically determinable impairments consisting of degenerative disc disease and obesity, but that those impairments were not severe, singly or in combination. [AR 22]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [AR 28]. On October 14, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's

1  decision. [AR 1-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Severity Determination**

Plaintiff contends that the ALJ erred in finding that he did not suffer from a severe impairment. [JS 4-7].

At step two of the sequential evaluation process, the ALJ determines whether the claimant has any severe, medically determinable impairment that meets the durational requirement. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996). A medically determinable impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; see also 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

To assess severity, the ALJ must determine whether a claimant's impairment or combination of

impairments significantly limits his or her physical or mental ability to perform "basic work activities."[1] 20 C.F.R. §§ 404.1521(a), 416.921(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96–3p, 1996 WL 374181, at *2. A medically determinable impairment or combination of impairments may be found "'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is clearly established by medical evidence." Webb, 433 F.3d at 687 (internal quotation marks omitted).

Here, the ALJ erred in finding that plaintiff's back impairment was not severe. First, the objective medical evidence included MRIs of plaintiff's lumbar spine performed in December 2008, August 2009, and November 2011 that revealed degenerative disc disease on multiple levels with a large herniation at L4-L5.[2] [See AR 309, 312-313, 497-498, 513]. Similarly, x-rays taken in April 2012 showed a large disc herniation at L4-L5 with bilateral facet joint arthritis and degenerative disc disease at L2-L3, L3-L4 and L4-L5. [AR 409]. Subsequent x-rays taken in August 2012 revealed "splinting" of plaintiff's lumbar spine suggesting muscle spasm. [AR 427].

Second, the medical opinions in the record indicate that plaintiff's back impairment had, at the very least, more than a minimal effect on plaintiff's ability to work. For example, in May 2009, Andrew

---

[1] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

[2] The court notes that radiologist Stuart Strausberg, D.O. interpreted the November 2011 MRI as showing a large herniation at the L5-S1 level and no herniation at L4-L5. [AR 498]. However, orthopedic surgeon Satish Lal, M.D. disagreed with Dr. Strausberg and concluded that the herniation was at L4-L5. [AR 513].

3

1  Jarminski, M.D., plaintiff's treating internist, noted that plaintiff had injured his back while lifting pallets
2  at work. [AR 401].  Dr. Jarminski performed a physical examination and found that plaintiff had a limited
3  and painful range of motion of his lumbar spine, paralumbar muscle tenderness at L4 through S1, decreased
4  L5 sensation in the lower extremities, and a positive bilateral straight leg raise test.[3]  [AR 403].  After
5  reviewing plaintiff's records, Dr. Jarminski diagnosed lumbar spine discopathy and lower extremity
6  radiculitis. [AR 403].  Dr. Jarminski concluded that plaintiff's back impairment was "clearly in need of
7  surgical intervention."  [AR 404].

8  In May 2010, plaintiff was evaluated by James Hamada, M.D., an orthopedic surgeon.  The
9  examination revealed a limited range of motion of the lumbar spine, a positive straight leg raise test on the
10 right with a positive Lasegue sign, tenderness with muscle spasm from L4 through S1, and decreased
11 sensation over the left L5 dermatome. [AR 304-305]. Dr. Hamada diagnosed L4-L5 herniated nucleus
12 pulposus and segmental instability and left L5 subjective radiculopathy. [AR 306]. Dr. Hamada also
13 recommended surgery. [AR 306].

14 In April 2012, Satish Lal, M.D., conducted an examination of plaintiff and discovered tenderness
15 over the lumbar spine, limited and painful range of motion of the lumbar spine, and muscle spasm.  Dr. Lal
16 diagnosed large disc herniation at L4-L5 with mild facet joint arthritis and low back pain with lower limb
17 radiculopathy. [AR 409]. Dr. Lal also recommended surgery, specifically, a laminectomy, discectomy, and
18 bilateral foraminotomy. [AR 409-410].

19 Finally, Plaintiff was seen by Curtis Montgomery, D.C. in connection with his workers'
20 compensation claim.  Mr. Montgomery reported positive findings of limited and painful lumbar range of
21 motion. [See, e.g., AR 347, 360]. Mr. Montgomery placed plaintiff off work from November 2008 to March
22 2012.  [See AR 332-360].

23 As for plaintiff's residual functional capacity ("RFC"), the record contains three medical opinions
24 assessing his RFC, each of which concluded that he should be limited to light work.  Specifically, John
25 Steinmann, D.O., conducted a qualified medical evaluation in July 2011.  Dr. Steinmann did not rule out

---

[3] A positive Lasegue or straight leg raise test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4–L5 or L5–S1 spinal nerve roots. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., *Attorneys' Medical Deskbook 4th* § 18:4 (updated 2012).

surgery, but he cautioned against it in light of the fact that plaintiff's degenerative disc disease affects three levels of his lumbar spine. According to Dr. Steinmann, surgery should only be an option when disease is limited to one or, at the most, two levels. Dr. Steinmann precluded plaintiff from lifting more that 25 pounds and from repetitive bending and stooping. [AR 503-504]. Similarly, non-examining state agency physicians, K. Vu, D.O., and D. Rose, M.D., reviewed plaintiff's medical records in January 2012 and July 2012, respectively, and concluded that plaintiff should be limited to light work with occasional postural activities.[4] [AR 67-68, 88-89].

Plaintiff's treatment history provides additional evidence regarding the severity of his back impairment. Plaintiff visited Dr. Jarminski and chiropractor Montgomery frequently for his back pain. [See AR 332-398]. He also went to the emergency room on multiple occasions complaining of back pain. [See AR 319-331, 417-423, 442-453]. Since 2008, he was treated with acupuncture, physical therapy, massage, epidural steroid injections, muscle relaxers, a back brace, and pain medications. [See, e.g., AR 49-51, 301-302, 391, 404, 431, 500-501]. Additionally, as noted above, several physicians recommended surgery. [AR 301, 404, 409-410].

In finding no severe impairment, the ALJ cited plaintiff's daily activities, some normal physical examination findings, plaintiff's response to pain medications, and the fact that plaintiff never underwent surgery. [See AR 22-27]. However, these findings are insufficient to "clearly establish[]" that plaintiff's back impairment was non-severe. See Webb, 433 F.3d at 687 (noting that the ALJ "may find a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is clearly established by medical evidence"). Furthermore, it appears that the only reason that plaintiff never underwent surgery was because it was not approved by his insurance. [See, e.g., AR 428]. See SSR 96-7p, 1996 WL 374186, at *7 (noting that "the adjudicator must not draw any inferences about an individual's

---

[4] An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In this case, however, the ALJ gave no reasons for rejecting Dr. Steinmann's opinion regarding plaintiff's RFC. Furthermore, as for the non-examining state agency physicians, the ALJ rejected their opinions because they were inconsistent with the objective medical evidence and plaintiff's conservative course of treatment. [See AR 27]. But these reasons are not persuasive because the objective medical evidence and plaintiff's treatment history indicate that his back impairment was severe.

5

symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The ALJ cannot selectively choose the portions of the medical record favorable to his decision and ignore less favorable evidence. See, e.g., Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). The severity requirement is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290. In this case, the ALJ applied an "overly stringent" severity standard.

In sum, the ALJ's severity determination is not supported by substantial evidence.

Finally, defendant argues that even if the ALJ erred at step two, any error was harmless because the ALJ made the alternative finding at step five that plaintiff could perform jobs existing in significant numbers in the national economy. [JS 10-12]. This argument is based on the following statement by the ALJ:

> [E]ven if the undersigned were to credit the state agency and [Dr. Steinmann], the claimant would not be disabled at step five of the sequential evaluation. . . . The vocational expert opined, and I concur, that a hypothetical individual with the claimant's vocational profile and an RFC for light work, with occasional postural activities, and needing a sit/stand option every 30 minutes, while unable to perform [claimant's past relevant work], could nevertheless . . . perform production solderer (DOT 813.684-022), 1600 regionally and 39000 nationally; ticket seller (DOT 211.467-030) 9100 regionally and 150000 nationally; or garment sorter (DOT 222.687-014) 1200 regionally and 25000 nationally. Thus, the claimant would not be disabled even if limited to light work.

[AR 27].

Defendant's argument lacks merit. If the ALJ's statement is intended as an alternate finding of nondisability at step five, it is defective as a matter of law. The ALJ failed to assess plaintiff's RFC in his decision, did not make a formal RFC finding, and failed to make a properly supported finding at step five. [See AR 22-28]. Rather, he ended his analysis at step two.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and

6

1 simply award benefits, is within the discretion of the court. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-1102 (9th Cir. 2014) (citing Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000)). The Ninth Circuit has observed that "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004)(quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). In this case, a remand for further administrative proceedings is the proper remedy because the ALJ erred in finding no severe impairment and prematurely terminated the sequential evaluation procedure at step two.[5]

## Conclusion

The Commissioner's decision is not based on substantial evidence in the record and is not free of legal error. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

June 17, 2016

ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] Plaintiff also argues that the ALJ improperly assessed his credibility. [See JS 12-15]. However, the Court need not consider this alternate ground for remand. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").